JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
LAURA K. LIN (State Bar No. 281542)
laura.lin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:  (415) 512-4000
Facsimile:   (415) 512-4077

Attorneys for American Management
Services LLC, d/b/a Pinnacle

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUNGER, TOLLES & OLSON LLP O/B/O AMERICAN MANAGEMENT SERVICES LLC, D/B/A PINNACLE,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF THE ARMY,<br><br>Defendant. | Case No. 13-CV-6890-DDP (MANx)<br><br>**DECLARATION OF JONATHAN H. BLAVIN IN SUPPORT OF PLAINTIFF'S OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT** |

I, Jonathan H. Blavin, declare under the penalty of perjury under the laws of the United States and the State of California that the following is true and correct.

1. I am an attorney with the law firm Munger, Tolles & Olson LLP ("MTO"), counsel of record for American Management Services LLC, d/b/a Pinnacle in the above-entitled action. I am licensed in the State of California and admitted to practice before this Court. I make this declaration based on my personal knowledge, and, if called upon as a witness, I could and would testify competently as to the matters set forth below. I am over the age of 21 years and suffering from no legal disability.

2. On September 17, 2012, MTO on behalf of Pinnacle (hereinafter, "Pinnacle") filed a Freedom of Information Act ("FOIA") request for documents relating to four military housing projects: Monterey Bay, California Military Communities, Fort Belvoir, and Fort Benning. A true and correct copy of this request is attached as Exhibit A.[1]

3. On September 28, 2012, the Assistant Secretary of the Army (Installation, Energy and Environment) responded to Pinnacle stating that "[a]ll FOIA requests for the [Residential Communities Initiative] are administered by the U.S. Army Corps of Engineers, Norfolk Division" and directing Pinnacle to follow

---

[1] Exhibits A through N to this declaration are the same as Exhibits A through N attached to the Complaint. I attach them here for authentication purposes and for ease of reference for the Court.

-1-
CASE NO. 13-CV-6890-DDP
DECLARATION OF JONATHAN H. BLAVIN

up on its request by contacting the U.S. Army Corps of Engineers, Norfolk Division. A true and correct copy of this request is attached as Exhibit B.

4. By letter mailed October 8, 2012, Pinnacle re-submitted its request to the U.S. Army Corps of Engineers, Norfolk Division, as directed by the Assistant Secretary of the Army (Installation, Energy and Environment). A true and correct copy of this request is attached as Exhibit C.

5. The Army did not respond to Pinnacle's request within 20 working days, as required by law, 5 U.S.C. § 552(a)(6)(A)(i). On October 17, 2012, the Army sent a letter stating that the records at issue were obtained from a "non-government source," which I understood and later confirmed to be Clark Realty LLC ("Clark"). The Army stated that "[t]he source must be afforded the opportunity to present its argument on the legal and substantive issues involved prior to making an agency determination concerning release." The Army stated that it expected to receive the source's argument on November 1, 2012, and that Pinnacle could expect a response to its FOIA request "[s]hortly thereafter." In its October 17, 2012 letter, the Army instructed Pinnacle to contact a Ms. Colleen Hagy with questions. A true and correct copy of this letter is attached as Exhibit D.

6. On November 15, 2012, I called Ms. Hagy for an update on Pinnacle's pending request. Ms. Hagy reported that the Army did not submit the records to Clark until October 31, 2012—the day before the Army represented to Pinnacle that

it would receive a response from Clark. Ms. Hagy told me that she did not expect the Army to issue a response to Pinnacle's FOIA request until early December 2012.

7. On December 5, 2012, I spoke with Ms. Hagy again by telephone. Ms. Hagy stated that Clark had requested that the Army release virtually no records to Pinnacle. Ms. Hagy said that the Army's position was that everything should be released to the extent possible and that the redactions, if any, should be narrowly tailored. She called Clark's position "unreasonable."

8. On January 14, 2013, more than three months after Pinnacle submitted its request, the Army produced just one heavily redacted document. The Army cited FOIA Exemption 4 as the support for its redactions. This document relates to the Monterey project, just one of the four housing projects at issue in Pinnacle's request. A true and correct copy of the Army's January 14, 2013 response is attached as Exhibit E.

9. Between January 14, 2013 and March 4, 2013, I repeatedly sought to contact the Army by email and telephone to clarify if any additional documents would be forthcoming and the reasons for the Army's partial denial. For instance, on January 24, 2013, I stated, via email, that "we can only assume the Army is withholding from production several responsive documents." I asked, "Can you please identify for us the documents being withheld from production, and the basis for their withholding?" A true and correct copy of this email is attached as Exhibit F. The Army failed to respond to this email or any of my other communications.

10. On March 4, 2013, Pinnacle timely submitted an administrative appeal of the Army's failure to provide a meaningful and timely production of documents. A true and correct copy of this administrative appeal is attached as Exhibit G.

11. The Army did not respond to the administrative appeal within 20 working days, as required by law, 5 U.S.C. § 552(a)(6)(A)(ii).

12. On April 9, 2013, Todd Waldman of U.S. Army Corps of Engineers, Norfolk Division told me via a telephone call that Pinnacle's appeal should have been filed with a different department of the Army, despite the fact that the Assistant Secretary of the Army (Installation, Energy and Environment) directed Pinnacle to submit its request to the U.S. Army Corps of Engineers, Norfolk Division and that the U.S. Army Corps of Engineers, Norfolk Division itself directed Pinnacle to submit its administrative appeal to this division.

13. On April 9, 2013, Mr. Waldman agreed to forward Plaintiff's request to a Mr. Ian Clark, in the new division. Mr. Waldman wrote to Mr. Clark, stating in part (emphasis added):

> We sent them [Plaintiff] the files we had after making the applicable redactions. **However, I do agree with them that we should have had more files here**. I am assuming there is a gap in getting documents that will need to be addressed separately. Since you all use the documents in question, I am transferring the FOIA request to you all in the hope that you have the documents.

A true and correct copy of this email is attached as Exhibit H.

14. On April 9, 2013, my colleague Laura Lin (formerly Sullivan) contacted Mr. Clark and asked to schedule a call to discuss the pending request and how Plaintiff might work with the Army to expedite the appeal process. Mr. Clark left a voicemail message stating that he required additional time to review Plaintiff's appeal.

15. Between April 10, 2013 and April 29, 2013, Ms. Lin and I repeatedly sought to contact Mr. Clark and Mr. Waldman by telephone and email regarding the status of its administrative appeal. A true and correct copy of an email communication with Mr. Clark reflecting one such outreach effort is attached as Exhibit I. Both Mr. Waldman and Mr. Clark failed to respond to any of these communications.

16. On April 29, 2013, Ms. Lin wrote to Mr. Waldman and Mr. Clark asking for confirmation that the Army intended to respond to Pinnacle's administrative appeal. I was copied on this email. A true and correct copy of this email is attached as Exhibit J.

17. On April 30, 2013, Mr. Clark responded to the April 29, 2013 email by denying any responsibility for Pinnacle's administrative appeal and directing Pinnacle to contact a fourth division of the Army to seek a response to its request. Mr. Clark wrote in part, "I am sorry you have the impression I am addressing your FOIA request." He referred Pinnacle to Mr. Jose L. Burgos for further assistance. A true and correct copy of Mr. Clark's email is attached as Exhibit K.

18. On April 30, 2013, Ms. Lin and I contacted Mr. Burgos by telephone, as directed by Mr. Clark. Like Mr. Clark, Mr. Burgos denied any responsibility for Pinnacle's administrative appeal. Mr. Burgos directed Pinnacle to contact a fifth division of the Army and identified Hayley Curry in the Army General Counsel's Office.

19. On April 30, 2013, Ms. Lin and I contacted Ms. Curry by telephone, as directed by Mr. Burgos. I spoke with Ms. Curry and then Ms. Lin sent her Pinnacle's underlying record request and pending administrative appeal via email. Ms. Lin asked Ms. Curry to confirm that the Army would respond to Pinnacle's administrative appeal. A true and correct copy of this email is attached as Exhibit L.

20. On May 3, 2013, Ms. Curry told Ms. Lin and me via email that she had not yet received Pinnacle's administrative appeal from the Army and would not begin to review Pinnacle's record request until she received the appeal. Ms. Curry did not acknowledge that she had previously received the appeal paperwork from Pinnacle on April 30, 2013. A true and correct copy of Ms. Curry's email is attached as Exhibit M.

21. On May 24, 2013, more than 75 days after Plaintiff filed its administrative appeal, Mr. Curry reiterated that she had not yet begun to review Plaintiff's appeal. She wrote in part, "I am still trying to find out the exact status of your appeal, which is proving extremely difficult." A true and correct copy of this

1 email is attached as Exhibit N.  Pinnacle never received any further information

2 from Ms. Curry.

3

4     22.    Pinnacle initiated this litigation more than one year after submitting its

5 FOIA request.

6

7     23.    As shown in Exhibits 2 and 4 to the Declaration of Jason Axe, the

8 Army produced twenty-six additional documents between three and seven months

9 after Pinnacle filed its Complaint.

10     24.    On July 11, 2014, Ms. Lin contacted Mr. Axe by email to ask an

11

12 assortment of questions related to the declarations the Army filed in support of its

13 motion for summary judgment.  Among other questions, Ms. Lin asked when the

14 Army performed the searches described in paragraphs 3-8 of Mr. Burgos'

15

16 declaration.  Ms. Lin also asked multiple questions concerning the Army's record

17 retention policies.  A true and correct copy of this email is attached hereto as Exhibit

18 O.

19

20     25.    On August 22, 2014, Ms. Lin and I spoke with Mr. Axe by telephone

21 concerning Ms. Lin's July 11, 2014 email.  Mr. Axe explained that it had taken him

22

23 some time to receive information from the Army in response to Ms. Lin's July 11,

24 2014 inquiry.

25     26.    During the August 22, 2014 conversation, Mr. Axe stated that the

26

27 Army began the searches described in paragraphs 3-8 of Mr. Burgos' declaration in

28 October 2013.

27. During the August 22, 2014 conversation, Mr. Axe further stated that Mr. Burgos denied any responsibility for Pinnacle's administrative appeal in April 2013 because Mr. Burgos was not, at that time, responsible for Pinnacle's administrative appeal. Mr. Axe stated that all FOIA administrative appeals are handed by the Army General Counsel's Office.

28. During the August 22, 2014 conversation, Mr. Axe did not identify any retention policies and said he did not expect he could produce any policies related to the deletions described in Mr. Burgos' declaration.

29. Attached hereto as Exhibit P is a true and correct copy of a publication titled, "A History of the U.S. Army's Residential Communities Initiative, 1995-2010" as downloaded from the "RCI History" tab of this Army website: http://www.rci.army.mil/. The publication states that it was "Prepared for the Office of the Assistant Secretary of the Army, Installations, Energy & Environment[.]"

30. Attached hereto as Exhibit Q is a true and correct copy of Army Regulation 25-400-2 titled, "The Army Records Information Management System (ARIMS)" as downloaded from this Army website: http://www.apd.army.mil/.

31. Attached hereto as Exhibit R is a true and correct copy of Army Pamphlet 25-403 titled, "Guide to Recordkeeping in the Army" as downloaded from this Army website: http://www.apd.army.mil/.

32. Attached hereto as Exhibit S is a true and correct copy of a record entitled, "Installation Management and Field Organizations" as downloaded from

this Army website: https://www.arims.army.mil/ARIMS/RRSA/Search.aspx. Exhibit R describes the record retention schedule for certain records created during the design, funding, and award stages of construction contracts and provides that these records must be retained for "6+" years.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed at San Francisco on August 26, 2014.

*/s/ Jonathan H. Blavin*
JONATHAN H. BLAVIN