O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MUNGER, TOLLES & OLSON LLP      )   Case No. CV 13-06890 DDP (MANx)
O/B/O AMERICAN MANAGEMENT       )
SERVICES LL, D/B/A PINNACLE,    )   **ORDER RE: MOTIONS FOR SUMMARY**
                                )   **JUDGMENT**
                Plaintiff,      )
                                )   [DOCKET NUMBERS 27 AND 31]
        v.                      )
                                )
UNITED STATES DEPARTMENT OF     )
THE ARMY,                       )
                                )
                Defendant.      )
_____ )

        Presently before the court are cross-motions for summary

judgment regarding Plaintiff's request for documents from

Defendant, a government agency, under the Freedom of Information

Act ("FOIA").  Although Defendant has released some responsive

documents, Plaintiff alleges that the documents released were

improperly redacted, more documents should be released, and

Defendant unreasonably delayed answering the request even with

regard to the documents that were produced.  Defendant argues that

its search was reasonable and that the documents not released are

exempt from disclosure.

# I.    BACKGROUND

Plaintiff Munger, Tolles & Olsen LLP ("MTO") brings this suit as the requestor of certain records allegedly held by the Department of the Army ("the Army"). (Compl. ¶ 13.)  MTO requested the records, and now sues, on behalf of its client, American Management Services LLC d/b/a Pinnacle ("Pinnacle"). (<u>Id.</u> at ¶ 1, 9.)  Pinnacle is involved in ongoing litigation with Clark Realty Capital, LLC ("Clark") over a joint venture between the two companies to develop and manage certain family housing complexes for the Army (collectively, "the Projects"). (<u>Id.</u> at ¶¶ 5-7, 17-21.)  Pinnacle alleges that Clark is attempting to force it out of the Projects. (<u>Id.</u> at ¶¶ 5-7, 22.)  The requested records are proposals to modify and expand the scope of the Projects, which Pinnacle alleges resulted in "millions of additional dollars for the projects—funds that became available at essentially the same time that Clark initiated litigation against Pinnacle . . . ." (<u>Id.</u> at ¶ 8.)

Thus, on September 17, 2012, MTO submitted a FOIA request to the Army (via the Office of the Assistant Secretary of the Army, Installations & Environment) requesting the release of the following:

1. All documents and communications received from Monterey Bay Military Housing LLC related to Modified Scope Plans at Monterey Bay, including but not limited to preliminary reports, presentations, projections, forecasts, working papers, and assessments.

2. All documents and communications received from Fort Belvoir Residential Communities LLC related to Modified Scope Plans at

1      Fort Belvoir, including but not limited to preliminary
2      reports, presentations, projections, forecasts, working
3      papers, and assessments.
4      3. All documents and communications received from Fort Benning
5      Family Communities LLC related to Modified Scope Plans at Fort
6      Benning, including but not limited to preliminary reports,
7      presentations, projections, forecasts, working papers, and
8      assessments.
9      4. All documents and communications received from California
10     Military Communities LLC or Fort Irwin Land LLC related to any
11     post-closing capital contributions to Fort Irwin Land and any
12     subsequent loans from Fort Irwin Land to California Military
13     Communities, including but not limited to preliminary reports,
14     presentations, projections, forecasts, working papers, and
15     assessments.
16  (Compl., Ex. A.)

17     Plaintiff alleges, and provides documentation of, the
18  following chain of events after its request was received: On
19  September 28, 2012, Paul Cramer of the Assistant Secretary's office
20  informed MTO that the United State Army Corps of Engineers, Norfolk
21  District ("USACE") handled FOIA requests regarding the projects.
22  (Compl., Ex. B.) On October 8, 2012, MTO directed its request to
23  the appropriate person at USACE.  (Compl., Ex. C.)  On October 17,
24  USACE notified MTO that because the request "involve[d] records
25  that were obtained from a non-government source," USACE would have
26  to hear legal arguments from the source (here, Clark) before
27  releasing the documents.  (Compl., Ex. D.)  On January 14, 2013,
28  the Army released "just one heavily redacted document" out of

3

"hundreds (if not thousands)" of documents MTO expected. (Compl.
at ¶ 2 & Ex. E.)  The letter accompanying the released document
explained that the request was partially denied and that MTO had a
right to appeal the denial. (Compl., Ex. E.)  MTO filed an
administrative appeal with USACE's counsel March 4, 2013. (Compl.,
Ex. G.)  Although MTO sent the appeal to the address indicated in
USACE's letter, there appears to have arisen thereafter some
administrative confusion as to the location of MTO's appeal packet
and who, exactly, was responsible for hearing and responding to the
appeal. (Compl., Exs. H-N.)  As of May 24, 2013, the person
responsible for reviewing the appeal had apparently still not
received the proper documents. (Compl., Ex. N.)  Because of this
series of miscommunications and delays, MTO alleges, "[t]he Army
did not respond to Plaintiff's appeal within twenty working days,
as required by law." (Compl. ¶ 50.)

MTO alleges that as of September 18, 2013, when it filed the
Complaint, it had received no further responsive documents. (Id.
at ¶ 61.)  On November 19, 2013, another office of the Department
of the Army altogether, the Office of the Administrative Assistant
to the Secretary of the Army, sent MTO a letter stating that it was
the entity authorized to accept FOIA requests and apparently
restarting the process under a new case number. (Decl. Jason Axe,
Ex. 1.)  On December 12, 2013, that office responded to the March
4, 2013 appeal, agreeing to "releas[e] the requested documents to
you with partial redactions," but notifying MTO that the Army was
withholding about 50 pages' worth of documents altogether. (Decl.
Jason Axe, Ex. 2.)  On April 21, 2014, the Army sent MTO a
"modified release of documents" undoing some of the redaction on

4

one page in the December 12 release and releasing an additional 13 pages.  (Decl. Jason Axe, Ex. 4.)  It appears, therefore, that at this time 379 pages, comprising 26 documents, have been released in redacted form to MTO.  (Def.'s <u>Vaughn</u> Index, Decl. Jose Burgos.) Six additional documents, identified as "Excel Spreadsheets," were withheld altogether.  (<u>Id.</u>)  The Army has indicated that these redactions and withholdings were done by Clark's counsel.  (<u>Id.</u>) MTO does not concede that these 32 documents are the only relevant documents.  (Pl.'s Statement Genuine Disputes Material Fact at 4:10-13.)

MTO seeks release of any withheld records, the release of all documents "without improper redactions," a declaratory judgment that "it was unlawful for the Army to fail to disclose the subject records," and attorneys' fees.  (Compl. at section titled "RELIEF REQUESTED.")

The parties have filed cross-motions for summary judgment. (Dkt. Nos. 27, 31.)  On October 9, 2014, the Court ordered the Army to produce the documents in question for in camera review, as well as to supplement its Vaughn Index with clearer descriptions of the items withheld in their entirety.  (Dkt. No. 43.)  The Court also requested supplemental briefing from both parties on legal precedent regarding FOIA exemption of the specific kinds of information at issue, and also on the factual question of whether Clark was likely to suffer competitive injury if the information was revealed.  (<u>Id.</u>)  Both parties submitted supplemental briefs on October 27.  (Dkt. Nos. 46-48.)

///

///

## II.   LEGAL STANDARD

A party may move for summary judgment with regard to any claim or defense or any part of any claim or defense.  Fed.R.Civ.P. 56(a).  The court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id.

"Because there will rarely be any genuine issues of material fact [in FOIA cases]-the document says whatever it says-the case may usually be decided on summary judgment." Assembly of State of Cal. v. U.S. Dep't of Commerce, 968 F.2d 916, 919 (9th Cir. 1992). In many cases, the court simply "examine[s] the requested document . . . to determine whether it falls within any of FOIA's statutory exemptions from disclosure." Id.

However, where a defendant agency relies on the statutory exemption from disclosure for trade secret or other confidential commercial information obtained from third party persons, 5 U.S.C. § 522(b)(4), there may be factual questions despite clear identification of the documents in question.  This is because whether information is "confidential" for purposes of the exemption turns on whether its disclosure is likely to either "impair the Government's ability to obtain necessary information in the future" or "cause substantial harm to the competitive position of the person from whom the information was obtained." GC Micro Corp. v. Def. Logistics Agency, 33 F.3d 1109, 1112 (9th Cir. 1994). Particularly with regard to the "competitive position" of the third party, more factual development may be needed to determine the state of the marketplace and whether the material to be disclosed would affect the third party's position.  See Nat'l Parks &

1    Conservation Ass'n v. Morton, 498 F.2d 765, 770-71 (D.C. Cir. 1974)

2    (remanding for further factual development where it was not clear

3    whether affected third party's competitive position would be

4    injured).

5           "In evaluating a claim for exemption, a district court must

6    accord substantial weight to agency affidavits, *provided the*

7    *justifications for nondisclosure are not controverted by contrary*

8    *evidence* in the record or by evidence of agency bad faith." Milner

9    v. U.S. Dep't of the Navy, 575 F.3d 959, 963 (9th Cir. 2009) rev'd

10   as to other matters sub nom. Milner v. Dep't of Navy, 131 S. Ct.

11   1259 (U.S. 2011) (emphasis added).

12   **III. DISCUSSION**

13   **A.   Delay in Violation of FOIA's Requirements**

14          Plaintiff argues that the Army's delay in producing the

15   documents, caused in large part by a failure to promptly identify

16   the entity to which FOIA requests should be addressed, is itself a

17   FOIA violation.  FOIA requires agencies to respond to document

18   requests within 20 days of receipt.  5 U.S.C. § 552(a)(6)(A)(I).

19   The Army took substantially longer than that to respond fully to

20   Plaintiff's request and subsequent appeal.  Plaintiff therefore

21   seeks a declaratory judgment that the Army has violated FOIA's

22   timeliness requirements, independent of how the Court resolves the

23   question of whether the remaining undisclosed documents are exempt

24   from disclosure.  (Compl., "RELIEF REQUESTED" ¶ 3.)

25          This Court has the authority to issue declaratory judgment

26   "[i]n a case of actual controversy within its jurisdiction," in

27   order to clarify "the rights and other legal relations of any

28   interested party seeking such declaration, whether or not further

relief is or could be sought." 28 U.S.C. § 2201. Plaintiff seeks attorney's fees pursuant to 5 U.S.C. § 522(a)(4)(E), which allows a FOIA requestor to seek "reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." (Compl., "RELIEF REQUESTED" ¶ 4.) Because, as is discussed below in Part III.B., the Court ultimately holds that the Army's redactions were for the most part permissible under the commercial information exemption, it is not immediately clear whether Plaintiff would be entitled to attorney's fees on the basis of that claim alone. Thus, a declaratory judgment that the Army unreasonably delayed responding to Plaintiff's FOIA request could change the "rights and other legal relations" between the parties.[1]

Some district courts cite to Papa v. United States for the proposition that "the production of all nonexempt material, 'however belatedly,' moots FOIA claims." 281 F.3d 1004, 1013 (9th Cir. 2002) (quoting Perry v. Block, 684 F.2d 121, 125 (D.C.Cir.1982)). But the Papa quote is dictum in a case where timeliness under FOIA was not at issue, and Perry, though more on point, is a 1982 district court case from another circuit, and thus of at most persuasive value.

It seems fair to say that in the Ninth Circuit, courts sometimes enforce FOIA's timeliness requirements independent of the underlying disclosure issues, at least when the violation is "egregious" or when there is a "pattern or practice" of delay. See

---

[1]Although the request for attorney's fees was not addressed by either party in these motions, it does provide a basis for the Court to find that this declaratory judgment could change the legal relationship between the parties.

<u>Gilmore v. U.S. Dep't of Energy</u>, 33 F. Supp. 2d 1184, 1188 (N.D. Cal. 1998) (finding that a five month delay "constituted an improper withholding of those documents in violation of the FOIA" in the context of larger allegations of pattern and practice of delay); <u>Oregon Natural Desert Ass'n v. Gutierrez</u>, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006) (holding that an eight month delay was "a violation of FOIA, regardless of the final outcome of the request"); <u>S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.</u>, No. CIVS-06-2845 LKK/JFM, 2008 WL 2523819, at *6 (E.D. Cal. June 20, 2008) (holding a six-month delay "violative of FOIA"); <u>Hajro v. U.S. Citizenship & Immigration Servs.</u>, 832 F. Supp. 2d 1095, 1107 (N.D. Cal. 2011) ("It is undisputed that a plaintiff may bring a claim alleging a pattern and practice of unreasonable delay in responding to FOIA requests.") (internal quotation marks omitted). <u>Cf.</u> <u>Cmty. Ass'n for Restoration of the Env't, Inc. v. EPA</u>, No. 13-CV-3067-TOR, 2014 WL 3870168, at *9 (E.D. Wash. Aug. 6, 2014) (holding no cause of action where the delay was "not as egregiously late as the response" in <u>Gutierrez</u>); <u>but see</u> <u>id.</u> at 9-10 (noting that "procedural violations may warrant a remedy under the FOIA if there is a pattern and practice of such violations," applying <u>Gilmore</u>, and examining the merits of the plaintiff's pattern and practice claim). <u>See also</u> <u>Long v. IRS</u>, 693 F.2d 907, 910 (9th Cir. 1982) ("[U]nreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses."); <u>Fiduccia v. U.S. Dep't of Justice</u>, 185 F.3d 1035, 1041 (9th Cir. 1999) ("[P]eople who file Freedom of Information Act requests in 1986,

1  revised and clarified in 1993, cannot be made to wait until
2  2001.").

3      Here Plaintiff has not alleged facts showing that the Army
4  engages in a pattern or practice of delay.  Nor was the Army
5  egregiously deficient in responding to initial request for records.
6  Eleven days after Plaintiff's initial request, the Assistant
7  Secretary's office directed Plaintiff to USACE Norfolk, and
8  Plaintiff was able to lodge a request with USACE approximately
9  three weeks after its initial request.

10      At that point, however, the wheels began to come off the
11 wagon.  In a letter dated October 17, 2013, USACE explained that
12 because the record came from a "non-government source" it would
13 need additional time to consult with Clark about the release, but
14 stated that Clark's arguments were expected by November 1, and that
15 USACE would make its release determination "[s]hortly thereafter."
16 (Compl., Ex. D)  Under FOIA, an agency may notify a requestor that
17 it will take an additional ten days to make a determination of
18 whether it will release the requested documents if "unusual
19 circumstances" justify the delay.  5 U.S.C. § 552(a)(6)(B).  The
20 need to communicate with a non-government entity does not appear to
21 fall within the definition of "unusual circumstances."  5 U.S.C. §
22 552(a)(6)(B)(iii) ("unusual circumstances" defined as need to
23 retrieve records from offsite facility; need to compile voluminous
24 records; or need to consult with "another agency").  Nor does
25 Defendant cite any authority to suggest that it does.  Even if the
26 Court were willing to consider consultation with Clark as falling
27 within the "unusual circumstances" exception, however, the Army
28 took substantially longer than ten additional days to make its

10

initial determination of what records to release: the first release
of a single, redacted document did not occur for three months.

Even assuming for the sake of argument that a three month
delay at that point was not "unreasonable" or "egregious," the Army
further compounded the delay after Plaintiff timely filed an appeal
of the decision.  An agency has 20 days to respond to an appeal of
a FOIA decision.  5 U.S.C. § 552(a)(6)(A)(ii).  Here, the Army held
onto Plaintiff's appeal for another 11 months before responding.  A
total unjustified delay of over a year is "egregious."  "Congress
gave agencies 20 *days*, not years, to decide whether to comply with
requests . . . ."  <u>Fiduccia</u>, 185 F.3d at 1041 (9th Cir. 1999)
(emphasis in original).

That the delay of Plaintiff's appeal appears to have been the
result of bureaucratic mishandling rather than intentional
obfuscation weighs some in the balance, but not enough to make the
delay reasonable.  Agencies are under an obligation to establish
clear channels for FOIA requests, 5 U.S.C. § 552(a)(1)(A); implicit
in that obligation is that the agency and its employees will not
mislead requestors as to the proper method for making a request.
The Court will assume at this point that the Office of the
Administrative Assistant to the Secretary of the Army is, in fact,
the correct entity to respond to this FOIA request, and that no
other Army entity will emerge several weeks from now to take
control of the case.  But if that is so, then the Office of the
Assistant Secretary of the Army, Installations & Environment, was
under an obligation to point Plaintiff to that office in the first
place, or at the very least not to misdirect Plaintiff to USACE.
And USACE was similarly under an obligation not to hold itself out

1  to Plaintiff, for the better part of a year, as the correct entity.

2      In <u>Fiduccia</u>, the Ninth Circuit refused to excuse the

3  government's excessive delay even where "practical difficulties"

4  existed due to budget cutbacks beyond the agency's control.

5  <u>Fiduccia</u>, 185 F.3d at 1041.  This Court will not excuse the Army's

6  excessive delay simply because it has not created efficient

7  mechanisms for referring FOIA requests to the appropriate

8  entity–especially when it has affirmatively misinformed Plaintiff

9  as to where the request should be directed.

10     The Court finds that the Army's unreasonable delay violated

11 FOIA's timeliness requirements.

12 **B.   The Withheld Materials and the Exemption for Confidential**

13      **Commercial Information**

14     The Army has redacted or withheld in their entirety certain

15 materials responsive to Plaintiff's request, pursuant to the

16 exemption from disclosure for confidential commercial material.  5

17 U.S.C. § 552(b)(4).  Specifically, the Army has withheld technical

18 drawings, scheduling plans, and financial information contained in

19 the modified scope plans, as well as certain spreadsheets of

20 financial information known as "Pro Formas" associated with each

21 project.  Plaintiff alleges that the withholding was improper.

22     The exemption under § 552(b)(4) does not cover all information

23 that a contractor shares with the government; only information

24 which is "privileged or confidential" is exempt.  <u>Id.</u>  Privilege is

25 not at issue here.  Information is "confidential" if its disclosure

26 is likely to either "impair the Government's ability to obtain

27 necessary information in the future" or "cause substantial harm to

28 the competitive position of the person from whom the information

was obtained." <u>GC Micro Corp. v. Def. Logistics Agency</u>, 33 F.3d 1109, 1112 (9th Cir. 1994).  Defendant primarily[2] argues that releasing the redacted/withheld materials will harm Clark's competitive position, because other companies will be able to use the information to reconstruct information about Clark's practices. To prevail on the competitive position prong, Defendant must show "(1) actual competition in the relevant market, and (2) a likelihood of substantial competitive injury if the information were released." <u>Lion Raisins v. U.S. Dep't of Agric.</u>, 354 F.3d 1072, 1079 (9th Cir. 2004).  The defendant agency has the burden of showing that a withheld document falls within the exemption: "[T]he burden is on the agency to sustain its action."  5 U.S.C. § 552(b)(4)(B).

**1.   Technical Drawings**

       As an initial matter, Plaintiff does not dispute the redactions of technical drawings, (Opp'n & Mot. Summ. J. at 2 n.1), and neither party argues the point in subsequent briefings.  The Court therefore finds that there is no genuine dispute of material fact as to the confidentiality of the technical drawings.  Summary judgment is granted to Defendant as to the redacted drawings.

---

       [2]Initially, Defendant also argued that disclosure would harm the Army's ability to obtain this sort of information in the future.  (Dkt. No. 27 at 10:18-23.)  However, this was supported by a single, conclusory statement in the declaration of Jose Burgos, (Dkt. No. 28-1, ¶ 15), and appears to have been abandoned in the Reply.  (Dkt. No. 36.)  In any event, courts have often been reluctant to give this argument much credence when it comes to large government contractors: "It is highly unlikely that NAVAIR's ability to obtain such information in the future would be impaired in the least if it releases the contracts, and Martin Marietta does not argue that it will. Government contractors, including Martin Marietta, will continue bidding for NAVAIR contracts despite the risk of revealing business secrets if the price is right." <u>Martin Marietta Corp. v. Dalton</u>, 974 F. Supp. 37, 40 (D.D.C. 1997).

**2.   Actual Competition in a Relevant Market**

Plaintiff argues that Clark no longer faces competition in a relevant market, because the bidding for domestic military housing projects is closed.  (Pl.'s Suppl. Briefing at 7.)  Defendant, however, notes that the Navy, at least, may continue to take bids for follow-on work on some projects.  (Def.'s Suppl. Briefing at 6.)  Defendant also identifies several additional markets in which Clark does or may face actual competition: (1) the market for bids to take over domestic projects where the initial bidder has failed; (2) the market for bids on overseas military housing; (3) the market for similar kinds of construction projects, such as university or low-income housing; and (4) as manager of the housing properties, the market for servicemember tenants, who may choose to rent on the private market instead.  (Def.'s Suppl. Briefing at 6-7, 12.)

In each of these markets, Clark bids or plans to bid for jobs, or competes for tenants, and other companies or entities do likewise.  All these markets are in the housing field, and so information about Clark's business model in housing construction and management is relevant to these markets.  The Court therefore finds that Clark now faces or will face actual competition in a relevant market.

**3.   Likelihood of Substantial Competitive Injury**

Plaintiff's primary arguments as to the likelihood of competitive injury are twofold.  First, Plaintiff argues that military housing projects are sui generis: the scheduling, phasing, budgeting, and costs of such projects have at least as much to do with the unique budgetary and personnel management needs of the

military as it does with Clark's ability to engage in construction on a particular timeline. (Pl.'s Suppl. Briefing at 9; Decl. Scott Orantia, Dkt. No. 31-2, ¶¶ 20-22.) And second, the redacted and withheld information is too dated to be of value to Clark's competitors. (Pl.'s Suppl. Briefing at 9-11.)

There is some merit to these arguments. Certainly the facts and figures themselves may have little bearing on future competitive bidding or other activities in the housing markets identified above. The bidding processes used may be different; the input costs are likely to vary depending on market conditions; interest rates fluctuate; scheduling and phasing are likely to vary according to the needs of the client; and so on. Such discrete factual data, seen in isolation, might tell a potential competitor little about Clark's future bids or other business activity.

But Defendant explained at oral argument, and the Court agrees, that it is not the data alone that must be considered, but the overall picture they give of Clark's internal deliberative process—how it structures its fees, how it categorizes its costs, how it responds to changes in the availability of financing, how it makes projections about future market conditions, how it structures payments to subcontractors, etc.

FOIA is designed to provide citizen oversight of government agencies, not to provide competing private contractors a window into each other's internal business practices. Thus, the cases confirm that large-scale financial information, such as overall contract pricing, is usually available for disclosure because it

lets the public know how agencies are spending taxpayer money.[3]
But more specific financial information is often protected from
disclosure, because revealing it would give competitors an unfair
peek into the company's operations.[4]   The D.C. Circuit has
explained:

> [T]he total contract price paid by the Government is routinely
> made public, because that disclosure informs citizens about
> "what their government is up to."   The pricing information
> Lockheed seeks, however, has little to do with the core
> purpose of the FOIA, namely, *contributing significantly to*

---

[3] <u>GC Micro Corp. v. Def. Logistics Agency</u>, 33 F.3d 1109, 1115
(9th Cir. 1994) ("[D]ata on the percentage and dollar amount of
work subcontracted out to SDB's on each defense contract tells
competitors nothing of, inter alia, the object of the contract or
subcontracts, the unit prices charged by the subcontractors, and
the profit or productivity rates of either the contractor or
subcontractors."); <u>McDonnell Douglas Corp. v. Nat'l Aeronautics &
Space Admin.</u>, 180 F.3d 303, 306 (D.C. Cir. 1999) ("It is undisputed
that the total price of the contract may be made public.");
<u>Racal-Milgo Gov't Sys., Inc. v. Small Bus. Admin.</u>, 559 F. Supp. 4,
6 (D.D.C. 1981) ("Disclosure of prices charged the Government is a
cost of doing business with the Government.").

[4] <u>Lion Raisins v. U.S. Dep't of Agric.</u>, 354 F.3d 1072, 1081
(9th Cir. 2004) ("[P]roducing the Line Check Sheets of Lion's
competitors would reveal the type of raisins Lion's competitors
produced at the time of the inspection . . . .   Moreover, revealing
the 'sampling time' information from the Line Check Sheets would
allow Lion to infer the volume of its competitors' raisin sales . .
. .   Finally, the 'remarks' column of the Line Check Sheets
typically includes information . . . from which the identity of the
packer being inspected could be inferred."); <u>Gulf & W. Indus., Inc.
v. United States</u>, 615 F.2d 527, 530 (D.C. Cir. 1979) ("The deleted
portions of the report included, among other things, 'actual costs
for units produced,' 'actual scrap rates,' 'break-even point
calculations' and 'actual cost data.'"); <u>McDonnell Douglas Corp. v.
U.S. Dep't of the Air Force</u>, 375 F.3d 1182, 1192 (D.C. Cir. 2004)
("We recoil . . . from the implication of . . . a per se rule (or
at least a strong presumption) that all constituent pricing
information-as opposed to the bid price itself-is to be disclosed;
such a rule would be squarely at odds with the protection we have
always understood Exemption 4 to provide for such pricing
information.").

1    *public understanding of the operations or activities of the*

2    *government*.  On the contrary, the information now in suit

3    reveals *the internal workings of the contractor, not those of*

4    *the Government*, and would seem to shed little if any light

5    upon the agency's performance of its statutory duties . . . .

6    [W]hether the lower bidder marked up one cost element by a

7    large margin and another by a small margin, in the course of

8    making its bid competitive overall, is not self-evidently

9    relevant to the question what the "government is up to."

10   McDonnell Douglas Corp. v. U.S. Dep't of the Air Force, 375 F.3d

11   1182, 1193 (D.C. Cir. 2004) (emphases added).

12       Having reviewed the unredacted files in camera, the Court

13   finds that, in the main, what has been redacted is the kind of

14   information that would unfairly let competitors look into Clark's

15   internal decision-making process.  The redacted information mostly

16   consists of information showing how Clark organizes and phases the

17   construction of new housing, how it reacts to unanticipated market

18   conditions, how it approaches financing, and how it breaks down

19   costs and spending to get the job done.  The Court does not agree

20   with all of Defendant's redactions and will issue a separate order

21   requiring the release of some small amounts of additional

22   information that do not seem to fall under the exemption for

23   confidential commercial information.  Some sentences describing

24   overall shifts in costs and income streams, general market

25   conditions, or changes in government policies, for example, are not

26   confidential commercial information and will be released.

27       But for the most part, the Army's redactions are reasonably

28   targeted to protect Clark's internal processes while still

providing a great deal of general information about the Projects,
the ways in which they were modified based on new information, and
how those modifications might affect the availability and quality
of military housing.  The Army has struck a reasonable balance
between providing information of public interest and protecting
Clark's internal processes, and most of the information was
correctly redacted.

**IV.  CONCLUSION**

   The parties cross-motions for summary judgment are each
GRANTED IN PART AND DENIED IN PART.  Summary judgment is GRANTED to
Plaintiff on the issue of delay; the Court finds that Defendant's
delays in processing Plaintiff's request and appeal constituted an
independent FOIA violation.  Summary judgment is GRANTED IN PART to
Defendant on the issue of the exempted material.  The Court will
return the unredacted copies of the documents to Defendant with a
separate order explaining what additional information is not
exempt; the Court orders Defendant to release such information to
Plaintiff.


IT IS SO ORDERED.


Dated: November 6, 2014

                              DEAN D. PREGERSON
                              United States District Judge